# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert M. Dow, Jr. | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 12 C 2424 | **DATE** | 1/4/2013 |
| **CASE TITLE** | Bauer vs. Holder | | |

**DOCKET ENTRY TEXT**

Before the Court are Defendant's motions to transfer [13], dismiss [17], and stay discovery [26]. For the reasons stated below, Defendant's motion to transfer [13] is granted. The Clerk is directed to transfer this case to the United States District Court for the Eastern District of Virginia. Defendant's motions to dismiss [17] and to stay discovery [26] will remain pending for disposition in the transferee court.

■[ For further details see text below.]   Docketing to mail notices.

# STATEMENT

## I. Background

According to his complaint, Plaintiff joined the FBI's New Agent Training Program (NATP) in Quantico, Virginia in March 2009. Soon after enrolling in the NATP, Plaintiff signed a document titled "Rules, Regulations, and Requirements at the FBI Academy for New Agent Trainees" (Requirements Document). See compl., ex. D.  According to the Requirements Document

> The NATP is designed to ensure that, upon graduation, [a New Agent Trainee has] attained the necessary proficiencies in specialized knowledge, skills, and abilities needed to effectively perform the duties of an FBI [Special Agent]. The NATP is also designed to assess each [New Agent Trainee's] suitability for the [Special Agent] position as measured by the [New Agent Trainee's] level of conscientiousness, cooperativeness, emotional maturity, initiative, integrity and judgment. [* * *]
>
> Various academic tests and firearms qualifications administered during the NATP will provide a quantitative measure of [the New Agent Trainee's] knowledge, skills, abilities, and overall proficiency level. Suitability standards are measured concurrent with proficiency criteria in all areas of training.

Alongside "proficiency" and "suitability" requirements, New Agent Trainees "must pass an Academy administered physical fitness test (PFT) in order to graduate."

> The PFT is a key component of the [Physical Training] program. It tests the strength endurance and ability of [New Agent Trainees] to perform individually in four events in the

> following sequence: sit-ups, 300-meter sprint, pushups, and a 1.5-mile run. * * * The minimum passing score on the PFT is twelve (12) cumulative points with at least one (1) point achieved in each of the first (4) events.

Plaintiff alleges that he satisfied all NATP requirements other than the PFT. Plaintiff attempted the PFT five times but was never able to do enough pushups to score a point. As a male trainee, Plaintiff was required to do 30 pushups, but his best effort was 29. See compl. ¶¶ 1, 7, 20, 26. Female trainees could score a point by completing 14 pushups.

Because Plaintiff could not pass the fitness test, he resigned from the NATP to avoid dismissal. Following his resignation, the FBI offered Plaintiff a position as an Intelligence Analyst in the Chicago Division. He accepted the job and moved to Chicago. In this lawsuit, Plaintiff claims that his inability to pass the NATP was the result of discrimination on the basis of sex in violation of Title VII. 42 U.S.C. § 2000e.

Specifically, Plaintiff alleges that the different minimum cutoffs for male and female trainees on the pushup component of the PFT were "arbitrarily selected" and "not properly validated" and do "not measure in any way the minimum physical ability required to do the job of Special Agent." The standards, he claims, allow "less overall physically fit females to become special agents." The 30-pushup minimum for males as compared to the 14-pushup minimum for females "placed an undue burden of compliance on males." And, finally, Defendant treated at least one "similarly situated" female trainee differently than Plaintiff by giving her an additional attempt to pass the fitness test. See compl. ¶ 46(a)-(g).

Under the venue provision of Title VII, Plaintiff has sued Defendant in a proper venue — the Northern District of Illinois is a "judicial district in which [Plaintiff] would have worked but for the alleged unlawful employment practice." 42 U.S.C. § 2000e-5(f)(3). Defendant has moved to transfer the case to the Eastern District of Virginia, also a proper venue under Title VII, as a "judicial district in the State in which the unlawful employment practice is alleged to have been committed" as well as "the judicial district in which the employment records relevant to such practice are maintained and administered." 42 U.S.C. § 2000e-5(f)(3). Though both venues are proper, Defendant argues that the Eastern District of Virginia is more appropriate, because that is where Plaintiff took the PFTs and that is where the PFT was designed and validated. Since filing its motion to transfer, Defendant has also moved to dismiss [17] and to stay discovery [26].

Because the Court agrees with Defendant that the Eastern District of Virginia is a more appropriate venue for Plaintiff's suit, the Court limits its discussion to Defendant's motion to transfer. Defendant's motions to dismiss and to stay discovery will remain open for disposition in the transferee court.

## II.     Motion to Transfer

A district court, "[f]or the convenience of parties and witnesses, in the interest of justice, * * * may transfer any civil action to any other district court where" jurisdiction and venue would have been proper at the time the suit was initiated. 28 U.S.C. § 1404(a); see *Hoffman v. Blaski*, 363 U.S. 335, 344 (1960); *Research Automation, Inc. v. Schrader-Bridgeport International, Inc.*, 626 F.3d 973, 977 (7th Cir. 2010). The moving party has the burden of establishing "that the transferee forum is clearly more convenient," based on the particular facts of the case. *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219-20 (7th Cir. 1986). The district court has the authority to "make whatever factual findings are necessary * * * for determining where venue properly lies." *In re LimitNone, LLC*, 551 F.3d 572, 577 (7th Cir. 2008).

# STATEMENT

In evaluating § 1404(a) motions, the Court considers: (1) the plaintiff's choice of forum, (2) the convenience of the parties, (3) the convenience of the witnesses, (4) the interests of justice, and (5) the location of the material events giving rise to the case. See *Roberts & Schaefer Co. v. Merit Contracting, Inc.*, 99 F.3d 248, 254 (7th Cir. 1996) (listing the first four statutory factors); see also *Continental Cas. Co. v. Staffing Concepts, Inc.*, 2009 WL 3055374, at *2-3 (N.D. Ill. Sept. 18, 2009) (elaborating on sub-factors). The Seventh Circuit teaches that the statutory factors "are best viewed as placeholders for a broader set of considerations, the contours of which turn upon the particular facts of each case." *Coffey*, 796 F.2d at 219 n.3; see also *Research Automation,* 626 F.3d at 978 ("The statute permits a 'flexible and individualized analysis' and affords district courts the opportunity to look beyond a narrow or rigid set of considerations in their determinations." (quoting *Steward Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988))); *Cote v. Wadel*, 796 F.2d 981, 985 (7th Cir. 1986) (explaining that the broad discretion accorded the trial court is a product of the "in the interest of justice" language).

The first factor, plaintiff's choice of forum, typically is accorded significant weight, *In re Nat'l Presto Indus., Inc.*, 347 F.3d 662, 664 (7th Cir. 2003), unless none of the relevant conduct occurred in that forum, *Chicago, Rock Island & Pac. R.R. Co. v. Igoe*, 220 F.2d 299, 304 (7th Cir. 1955).

Regarding the second factor, convenience of the parties, courts consider the residences and resources of the parties—in essence, their "abilit[y] to bear the expense of trial in a particular forum." *Von Holdt v. Husky Injection Molding Sys., Ltd.*, 887 F. Supp. 185, 188 (N.D. Ill. 1995). "Where the balance of convenience is a close call, merely shifting inconvenience from one party to another is not a sufficient basis for transfer." *Research Automation*, 626 F.3d at 978.

Examination of the third factor, convenience of the witnesses, emphasizes "the nature and quality of the witnesses' testimony." *Gueorguiev v. Max Rave, LLC*, 526 F. Supp. 2d 853, 858 (N.D. Ill. 2007). Many courts state that, all other things being equal, the convenience of non-party witnesses is accorded greater weight than the convenience of party witnesses, the latter of whom have to participate (or rather, whose non-participation brings more easily administered consequences). See, *e.g.*, *First Nat'l Bank v. El Camino Resources, Ltd.*, 447 F. Supp. 2d 902, 913 (N.D. Ill. 2006). At the same time, a movant cannot meet its burden with only vague statements about the inconvenience imposed by the litigation on non-party witnesses: "The party seeking transfer must specify the key witnesses to be called and make a generalized statement of their testimony." *Id.* (citing *Federated Dept. Stores, Inc. v. U.S. Bank Nat'l Assoc.,*, 2001 WL 503039, at *4 (N.D. Ill. May 11, 2001)); see also *Am. Family Ins. ex rel. Suddarth v. Wal-Mart Stores, Inc.*, 2003 WL 1895390, at *2 (N.D. Ill. Apr. 17, 2003) (defendant must show that the testimony of the particular witnesses is necessary to its case).

The fourth factor, interests of justice, relates to the "efficient administration of the court system," and therefore encompasses a variety of considerations including

> docket congestion and likely speed to trial in the transferor and potential transferee forums; each court's relative familiarity with the relevant law; the respective desirability of resolving controversies in each locale; and the relationship of each community to the controversy. The interest of justice may be determinative, warranting transfer or its denial even where the convenience of the parties and witnesses points toward the opposite result.

*Research Automation*, 626 F.3d at 978 (internal citations omitted). See also *Igoe*, 220 F.2d at 303; *Nat'l Presto Indus.*, 347 F.3d at 664 (discussing the "subpoena range" of the district court).

And, as previously discussed, the fifth factor, location of material events, becomes comparably more important when it differs from the first factor, plaintiff's choice of forum. *Amorose v. C.H. Robinson Worldwide, Inc.*, 521 F. Supp. 2d 731, 735 (N.D. Ill. 2007) (citing *Igoe*, 220 F.2d at 304). Although partially subsumed by the fourth factor, the location of material events is significant and may be considered separately. See *Research Automation*, 626 F.3d at 978.

## III. Analysis

In its motion, Defendant argues that the Eastern District of Virginia is a more appropriate venue because that is where the material events occurred, including Plaintiff's PFTs and the design and validation of the PFT requirements. Defendant's motion also describes a slew of potential witnesses who work or reside in the Eastern District of Virginia or nearby. Plaintiff responds that several potential witnesses, including Plaintiff and his wife, work and live in this district, that his choice of venue (of those permitted under Title VII) should be respected, and, most fundamentally, that this is case about whether or not a test is discriminatory, and so it will turn on documents and experts, not a dissection of the way in which his PFTs were administered at Quantico. The key factors breakdown as follows:

### 1. Plaintiff's Choice of Forum

Plaintiff brought his lawsuit in this district. That is a significant consideration, but, as mentioned, Plaintiff's choice carries less weight when none of the material events occurred in the district in which he has sued. See *Igoe*, 220 F.2d at 304. Nevertheless, Plaintiff's choice still matters, especially considering that Plaintiff has not sued in an exotic locale, but rather exactly where Defendant — an employer with a national presence — sent him to work as an analyst. This first factor favors Plaintiff.

### 2. Convenience of the Parties

Plaintiff and his attorneys work in this district, so it is plainly more convenient for Plaintiff to litigate here. Defendant has a national presence, so litigating in this district will not impose a major hardship, but it is much less convenient. The critical witnesses (see III.3 below) and documents reside in or near the Eastern District of Virginia, and the material events happened in the Eastern District of Virginia. Because both parties will need access to the sources of proof, it mitigates the inconvenience to Plaintiff of moving the case to Defendant's preferred venue. This factor is neutral.

### 3. Convenience of the Witnesses

The parties have each identified a variety of potential witnesses. Unsurprisingly, most of the potential witnesses that Defendant has identified work or reside in the Eastern District of Virginia. For instance:

> Charles Greathouse would likely testify about his role in the validation of the PFT and the physical fitness standards prior to implementation of the PFT.

> Gerald Jackson was the class supervisor for Plaintiff's New Agent Class and would likely testify about Plaintiff's PFT failures and his counseling of Plaintiff about those failures.

> Melinda Casey was a class supervisor for Plaintiff following his fourth PFT failure and would likely testify about her interactions with Plaintiff during that time.

> Michael Vuong would likely testify about his interactions with Plaintiff as his Defensive Tactics instructor for his New Agent Class.
>
> Michael Folmar would likely testify about his decision not to convene a New Agent Review Board for Plaintiff.
>
> Susan Dreiling would likely testify about her observations of one or more PFTs administered to Plaintiff and her involvement with grading the PFT.

Defendant has also described two potential witnesses that do not work or reside in the Eastern District of Virginia, but closer to Virginia than Chicago:

> Amy Grubb (Delaware) would likely testify about her role in the preparation and validation of the PFT at Quantico in 2003 and 2005.
>
> Brian Lamkin (Georgia) would likely testify about his decision not to convene a New Agent Review Board for Plaintiff and his decision to allow Plaintiff a fourth and fifth opportunity to take the PFT.

Plaintiff has also identified many potential witnesses, and several in the Chicago area. But other than Plaintiff and Plaintiff's spouse, these Chicago-area witness do not have knowledge about the PFT's design or Plaintiff's PFTs at the NATP. These local witnesses are prepared to testify about Plaintiff's character, his suitability to be a Special Agent, and his ability to pass a PFT as an applicant to the NATP. In addition, Plaintiff has identified a female Special Agent in Chicago referred to as "LM" who would likely testify about being afforded a sixth chance to pass the PFT. Plaintiff also lists four potential witnesses from Virginia or Washington, D.C., including two whom Defendant had not mentioned who would likely testify about policy changes involving the PFT and New Agent Review Board processes. Finally, Plaintiff identifies several potential witnesses outside both districts, including his NATP classmates (in Israel, Utah, California, and Georgia) and unnamed men who failed the PFT by one or two pushups (in California, Colorado, Arizona, Florida, and Virginia).

This case is about the fairness of the PFT as it was designed, validated, and administered to Plaintiff during the NATP. Unsurprisingly, a significant majority of the witnesses prepared to offer relevant testimony about a test developed and administered in Virginia are in the Virginia and Washington, D.C. areas. This factor, therefore, clearly favors Defendant.

### 4. Interests of Justice

Recall the that the "interests of justice" factor encompasses (1) docket congestion/speed to trial; (2) familiarity with the relevant law; (3) relative desirability of resolving controversies in each locale; and (4) relationship of each community to the controversy. *Research Automation*, 626 F.3d at 978. Drawing on Federal Court Management Statistics complied by the Administrative Office of the United States Courts, the parties agree that the docket is more congested and that time to trial would likely be considerably slower in this district as compared to the Eastern District of Virginia. The second consideration, familiarity with the law, is neutral. The third and fourth considerations favor transfer. This case is about a test designed and administered in Virginia.

### 5. Location of Material Events

Plaintiff argues that material events have happened in this judicial district because he received correspondence from Defendant and was denied reinstatement to the NATP in this district. But as Plaintiff describes his case, his claim concerns whether the PFT — including the requirements of the test, the way those requirements were selected, and the way Plaintiff was tested while he was in the NATP at Quantico — violated Title VII. The fact that the continuing effects of allegedly discriminatory conduct (in the form of correspondence or denial of reinstatement) have had an impact on Plaintiff where he lives, in this district, does not mean that the material events have occurred in this district. Manifestly, the vast majority of material events in this case happened in Virginia.

Plaintiff also argues that the location of material events should carry little weight because he is challenging the permissibility of a work requirement under Title VII. That challenge will turn on documentary evidence and expert testimony — is the test discriminatory or isn't it? — and not particular events in Virginia. But the test was designed and implemented in the Eastern District of Virginia through a series of events that the parties and a court will explore in detail. And, again, Plaintiff's case is also about administration of the test. It concerns, for example, whether similarly situated female or females had more chances to pass the PFT than Plaintiff, see, *e.g.*, compl. ¶ 46(g), and whether Defendant followed its own procedures, see, *e.g.*, compl. ¶ 28 ("The Requirements Document mandates that a New Agent Review Board (NARB) will convene to determine a [New Agent Trainee's] suitability for continued participation in the NATP upon a failure of all scheduled PFTs. * * * Despite that express agreement, Defendant failed to convene a NARB for Plaintiff to review the totality of the circumstances."). This fifth factor favors Defendant.

In sum, Plaintiff brought his lawsuit in this district, as Title VII permits. That factor supports keeping the case here, but its significance is limited where, as here, most if not all of the material events happened in the transferee district. And because most of the critical witnesses also reside or work in or near the transferee district, and because the case would likely be resolved more quickly there, the Court is persuaded that the transferee district is clearly more convenient.

### IV. Conclusion

For the reasons stated above, Defendant's motion to transfer [13] is granted. The Clerk is directed to transfer this case to the United States District Court for the Eastern District of Virginia. Defendant's motions to dismiss [17] and to stay discovery [26] will remain pending for resolution in the transferee court.